A99A2127. WHIRL v. SAFECO INSURANCE COMPANY et al.

(527 SE2d 262)

ELDRIDGE, Judge.

This subrogation action, brought under OCGA § 33-7-11 (f), presents an issue of first impression in this state:[1] Does the two-year statute of limitation for a personal injury claim (OCGA § 9-3-33)[2] apply to an insurer who brings a subrogation action under OCGA § 33-7-11 (f) to recover for the uninsured motorist personal injury payments it made to its insured, or does OCGA § 33-7-11 (f) create a statutory right of subrogation that gives the insurer, pursuant to OCGA § 9-3-22,[3] twenty years from the date of the collision to file suit? We conclude that, under the plain and unequivocal language of OCGA § 33-7-11 (f), in a subrogation action by an insurer to recover personal injury payments it made to its insured under Georgia's Uninsured Motorist Act, an insurer is bound by the two-year statute of limitation that is applicable to the insured to whom the insurer is subrogated, because the insurer stands in the shoes of its insured. Thus, we reverse the ruling of the trial court.

On July 13, 1995, Willie E. Richmond was involved in an automobile collision with Shawn Whirl, appellant. When the collision occurred, Whirl did not have liability insurance as required by law.

---

[1] This issue was raised previously in *State Farm &c. Ins. Co. v. Cox*, 233 Ga. App. 296, 298 (502 SE2d 778) (1998), aff'd, 271 Ga. 77 (515 SE2d 832) (1999), but was not ripe for consideration at such time because the issue had not been ruled on by the trial court.

[2] OCGA § 9-3-33 provides that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues."

[3] "All actions for the enforcement of rights accruing to individuals under statutes . . . shall be brought within 20 years after the right of action has accrued." OCGA § 9-3-22.

Richmond was insured under an automobile insurance policy issued by Safeco Insurance Company ("Safeco"), appellee. Under the policy's uninsured motorist provisions, Safeco paid Richmond for damages he sustained as a result of the collision in the amount of $788.04 for property damage and $15,000 for personal injuries.

On October 26, 1998, more than two years after the date of the collision, Safeco instituted this subrogation action against Whirl to recover both the property damage and personal injury uninsured motorist benefits paid to Richmond. Whirl timely answered and raised the affirmative defense that the suit was barred by the statute of limitation for personal injuries. Thereafter, Whirl moved for judgment on the pleadings on the basis that Safeco's personal injury subrogation claim was barred by the statute of limitation since it had not been commenced within two years of the July 13, 1995 collision. On April 14, 1999, the trial court denied Whirl's motion and held that, under OCGA § 9-3-22, the statute of limitation for a subrogation claim brought pursuant to OCGA § 33-7-11 (f) is 20 years. This Court granted Whirl's application for interlocutory review, and this appeal followed. *Held*:

In construing OCGA § 33-7-11 (f) to determine what statute of limitation is applicable,

> it is fundamental that the determining factor is the intent of the legislature[,] and we look first to the words of the statute to determine what [the] intent was[,] and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what that intent was. In fact, where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden.

(Citations and punctuation omitted.) *Indus. Indem. Co. v. Walck*, 192 Ga. App. 754, 756 (386 SE2d 521) (1989). Moreover, "[w]here possible, effect is to be given to all the words of a statute, and it is firmly established that courts should not interpret a statute so as to render parts of it surplusage or meaningless." (Citations and punctuation omitted.) *In the Interest of R. F. T.*, 228 Ga. App. 719, 722 (492 SE2d 590) (1997).

The Uninsured Motorist Act was passed by Ga. L. 1963, p. 588. From the inception of such act, the legislature granted the insurer, which pays a claim to its insured under the act, the right to "be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death, or damage to the extent that payment was made; including the proceeds recoverable from the assets of the insolvent insurer." Ga. L. 1963, pp. 588, 591,

§ 1 (h); OCGA § 33-7-11 (f). While OCGA § 33-7-11 does not specifically provide for a statute of limitation within such Code section, it is clear from the overall reading of the statute that a subrogation action must be brought in the name of the insured and must be brought against the tortfeasor as opposed to the tortfeasor's insurance company. In enacting such Code section,

> [i]f the legislature had intended to grant the insurer in this situation the additional authority to bring suit on its own behalf against the alleged tortfeasor, it would have explicitly done so. In other subsections of the statute the legislature expressly gives the insurer the option to proceed in its own name; notably these are instances in which legal proceedings are underway and the insurer is initially in a defensive posture.

(Citations and punctuation omitted.) *State Farm &c. Ins. Co. v. Cox*, 271 Ga. 77, 79 (515 SE2d 832) (1999). An insurer is not authorized to bring a subrogation action in its own name for uninsured motorist personal injury benefits it paid to its insured, because personal injury benefits cannot be assigned under OCGA § 44-12-24. "[T]hus, any action must be brought in [the insured's] name as the real party in interest. [Cits.]" *Travelers Ins. Co. v. Harris*, 226 Ga. App. 269, 270 (2) (486 SE2d 427) (1997).

Additionally, OCGA § 33-7-11 (f) provides that:

> [T]he bringing of an action against the unknown owner or operator as "John Doe" or the conclusion of such an action shall not constitute a bar to the insured, if the identity of the owner or operator who caused the injury or damages complained of becomes known, bringing an action against the owner or operator theretofore proceeded against as "John Doe"; provided, further, that any recovery against such owner or operator shall be paid to the insurance company to the extent that the insurance company paid the named insured in the action brought against the owner or operator as "John Doe," except that the insurance company shall pay its proportionate part of any reasonable costs and expense incurred in connection therewith, including reasonable attorney's fees.

Hence, under the plain language of the statute, the insurer, as subrogee, stands in the shoes of the insured and must pay its proportionate share of costs, expenses, and attorney fees to the insured.

> Consequently, the rights to which the subrogee succeeds are the same as, and no greater than, those of the subrogor;

therefore, the subrogee's rights are subject to any limitations incident to them in the hands of the subrogor, and subject to any defenses that might have been urged against the subrogor.

(Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 262 (2) (356 SE2d 877) (1987).

Safeco, citing to cases[4] involving other insurance subrogation actions under Georgia's old no-fault insurance statute, argues that OCGA § 33-7-11 (f) creates a statutory right of action and, thus, the 20-year statute of limitation set forth by OCGA § 9-3-22 is applicable, since OCGA § 33-7-11 (f) does not have a statute of limitation set out within the statute itself. We disagree.

Georgia's no-fault insurance law was enacted in 1974, 11 years after the legislature enacted the uninsured motorist statute. The no-fault insurance law paid for medical costs and economic loss only, i.e., property damage. Ga. L. 1974, p. 113, repealed Ga. L. 1991, pp. 1608, 1629, § 3.4. When the no-fault statute was enacted, the legislature expressly granted a different right of subrogation to the insurer from that it had previously given the insurer under the uninsured motorist statute. Under the no-fault statute, the legislature specifically stated that a subrogation claim was based on tort law between the insurers; the insurer was required to bring the subrogation claim in its own name and against the tortfeasor's insurer, not the tortfeasor.[5] See *U. S. Fidelity &c. Co. v. Joy Truck Lines*, 200 Ga. App. 330 (408 SE2d 142) (1991). The act further granted the insurer the right to bring a direct subrogation claim against the responsible tortfeasor who was uninsured or was not a self-insurer.[6] Such statutory assignment of the right to bring an action directly against the tortfeasor occurred because the claim resulted from a property loss, as opposed to a personal injury claim.

While the no-fault statute was amended several times prior to its being repealed to limit the parameters within which an insurer could bring a claim for subrogation, the right of recovery of the insurer in a subrogation action continued to be based on tort law between the

---

[4] *Hanover Ins. Co. v. Canal Ins. Co.*, 163 Ga. App. 20 (293 SE2d 509) (1982); *U. S. Fidelity &c. Co. v. Ryder Truck Lines*, 160 Ga. App. 650 (288 SE2d 1) (1981).

[5] "Insurers and self-insurers providing benefits without regard to fault . . . shall be subrogated to the rights of the persons for whom benefits are provided, to the extent of the benefits provided, *with the right of recovery and the amount thereof shall be determined by agreement on the basis of tort law between the insurers involved.*" (Emphasis supplied.) Ga. L. 1974, pp. 113, 119, § 5 (d).

[6] "If the responsible tortfeasor is uninsured or is not a self-insurer, the insurer or self-insurer providing benefits shall have a right of action to the extent of benefits provided against such tortfeasor." Ga. L. 1974, pp. 113, 119, § 5 (d).

insurers, and the insurer continued to have a direct right of subrogation against an uninsured tortfeasor who was not self-insured. Additionally, the Supreme Court held that under the no-fault statute, "where a case is settled prior to trial, the insurer's right of subrogation is not barred by its failure to intervene." *Prudential Commercial Ins. Co. v. Michigan Mut. Ins. Co.*, 261 Ga. 637, 639 (1) (410 SE2d 30) (1991). Hence, under the now repealed no-fault statute, the insurer did not stand in the shoes of its insured but had a separate statutory cause of action[7] which would not have existed except for some act of legislation. Therefore, the 20-year statute of limitation applied.[8]

This is not the case under the uninsured motorist statute where the insurer's rights, limitations, and defenses are the same as the insured's. In the amendments to the Uninsured Motorist Act, which occurred after the enactment of the no-fault statute, the legislature could have amended the Uninsured Motorist Act to give the insurer a cause of action independent of its insured. However, it chose not to do so. Since the language of the uninsured motorist statute is plain and unequivocal, we cannot interpret the legislative intent contrary to that language. Therefore, the insurer, as subrogee, is bound by the two-year statute of limitation for personal injury actions of its insured.[9]

*Judgment reversed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 20, 1999 —

*Clifford H. Hardwick*, for appellant.
*Stuart J. Oberman*, for appellees.

---

[7] See *Hanover Ins. Co. v. Canal Ins. Co.*, supra; *U. S. Fidelity &c. Co. v. Ryder Truck Lines*, supra.

[8] In order for the 20-year statute of limitation set forth in OCGA § 9-3-22 to apply, the rights must arise under a legislative enactment and must not have existed but for the act. *Houston v. John Doe*, 136 Ga. App. 583 (222 SE2d 131) (1975); *Williams v. Clemons*, 178 Ga. 619 (173 SE 718) (1934).

[9] See *Burke v. Schroth*, 4 Kan. App. 2d 13 (601 P2d 1172) (1979), which held that an insurer's "right of subrogation is lost if the tort statute of limitations [runs] against the insured under the theory that the right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created."